Alexander R. Wheeler, Esq. (SBN: 239541)
alex@parris.com
Jason P. Fowler, Esq. (SBN: 239426)
jason@parris.com
Daniel Eli, Esq. (SBN: 192019)
deli@parris.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
www.parris.com
Telephone: (661) 949-2595
Facsimile:  (661) 949-7524

Attorneys for Plaintiff *Tomaszewski*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT - CALIFORNIA

| | |
|---|---|
| NICHOLAS TOMASZEWSKI,<br><br>    Plaintiff,<br><br>v.<br><br>AIG PROPERTY CASUALTY COMPANY; and DOES 1 through 50, inclusive,<br><br>    Defendants. | **Case No.: 2:24-cv-04661-JFW-AGR**<br><br>*[Assigned to the Hon. John F. Walter (District) and Hon. Alicia G. Rosenberg (Magistrate)]*<br><br>**DISCOVERY MATTER**<br><br>**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTETIVE ORDER**<br><br>Hearing Date:   April 8, 2028<br>Time:           2:30 p.m.<br>Courtroom:      550 (via Zoom)<br><br>Complaint Filed: June 4, 2024<br>Trial Date:      October 28, 2025 |

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTETIVE ORDER**

# TABLE OF CONTENTS

*PAGE(S)*

I. INTRODUCTION. ...............................................................................................1

II. AIG'S MOTION MAKES NUMEROUS, UNSUPPORTED INFLAMATORY STATEMENTS. ...............................................................................................2

III. THIS COURT SHOULD ISSUE A PROTECTIVE ORDER PREVENTING OR LIMITING DEPOSITIONS OF PARRIS LAW FIRM EMPLOYEES. .....3

    A. A Protective Order Is Necessary To Prevent Defendant From Questioning Employees Regarding The Firm's Business Practices. ...................................4

    B. A Protective Order Is Necessary To Prevent AIG From Questioning Law Firm Employees Regarding Privileged/Work Product Information. .............5

        1. This Court has already rejected AIG's arguments when it denied AIG's motion to compel. ........................................................................................6

        2. A client's consultation with her attorney is not a "setup". .........................6

        3. California does not recognize a "setup" defense. ........................................7

        4. Plaintiff's subjective intent in making the demand is irrelevant. .............10

        5. Plaintiff's communications with the PARRIS Law Firm and motivations in making the demand are irrelevant to the Unclean Hands Defense. ....11

        6. AIG has not shown a compelling need for privileged/protected information. ........................................................................................13

IV. THE PARRIS FIRM IS ENTITLED TO A PROTECTIVE ORDER REGARDING ITS PRIVILEGED CLIENT COMMUNICATIONS. ..............14

    A. Communications Immediately After The Crash. ..............................................14

    B. Communications During The Instant Lawsuit. ................................................15

# TABLE OF AUTHORITIES

*PAGE(S)*

**Cases**

*Bostick v. Atl. Mut. Ins. Co.*
  2008 WL 11338091(C.D. Cal. Jan. 16, 2008) ...................................................... passim

*Coleman v. Republic Indemnity Ins. Co.*
  132 Cal.App.4th 403 (2005)...................................................................................11

*Cox v. Continental Cas. Co.*
  (W.D. Wash., May 16, 2014, No. C13-2288 MJP) 2014 WL 2011238, at *8, *aff'd* (9th Cir. 2017)................................................................................................................10

*CSAA Ins. Exchange v. Hodroj*
  72 Cal.App.5th 272 (2021)..........................................................................1, 8, 13

*Dutton v. State*
  970 P.2d 925 (Alaska App.1999)..........................................................................9

*Farris v. Fireman's Fund Ins. Co.*
  119 Cal.App.4th 671 (2004)...................................................................................7

*Home Indem. Co. v. Lane Powell Moss and Miller*
  43 F.3d 1322 (9th Cir. 1995)......................................................................... passim

*Hooser v. Superior Court*
  84 Cal.App.4th 997 (2000)........................................................................... passim

*J.B. Aguerre, Inc. v. Am. Guarantee & Liab. Ins. Co.*
  59 Cal. App. 4th 6 (1997).......................................................................................8

*Jade Fashion & Co. v. Harkham Indus., Inc.*
  229 Cal. App. 4th 635 (2014)...............................................................................12

*Kendall-Jackson Winery, Ltd. v. Superior Court*
  76 Cal.App.4th 970 (1999)...................................................................................12

*Kingik v. State, Dept. of Admin., Div. of Retirement and Benefits*
  239 P.3d 1243 (Alaska 2010)................................................................................9

*Meyer v. Benko*
 55 Cal.App.3d 937 (1976)..............................................................................4, 10

*Reigelsperger v. Siller*
 (2007) 40 Cal.4th 574...........................................................................................10

*Schlumberger Limited v. Superior Court*
 (1981) 115 Cal.App.3d 386..................................................................................13

*Transamerica Title Ins. Co. v. Superior Court*
 (1987) 188 Cal.App.3d 1047................................................................................13

*White v. W. Title Ins. Co.*
 40 Cal. 3d 870, 900, n.2 (1985).............................................................................7

*Williams v. Superior Court*
 3 Cal.5th 531 (2017)...............................................................................................1

**Statutes**

California Government Code §§911.2(a) ...................................................................3

California Government Code §§945.4........................................................................3

**Other Authorities**

1 Cal. Liability Insurance Practice: Claims & Litigation (Cont. Ed. Bar 2003) §§ 10.13, 10.14.)..................................................................................................................7

1 Witkin, Summary of Cal. Law (11th ed. 2024) Contracts § 116...................10

3 Cal. Affirmative Def. § 45:3 (2d ed.) .....................................................................12

## I. INTRODUCTION.

The PARRIS Law Firm ("PARRIS Firm" or "Law Firm") seeks a protective order with respect to two issue: (1) A limitation on discovery sought from Plaintiff's law firm; and (2) Protecting attorney/client protected communications with and among the Law Firm's clients. Defendant AIG Property Casualty ("AIG") concedes that deposition of opposing party's counsel are highly disfavored. It also concedes that the 47 questions asked at the deposition of the Law Firm's former employee (see Dkt. 63-8) sought information protected by the Law Firm's privacy/trade secret/work product protections. AIG, however, does not address any of these protections, or why questions regarding the Law Firm's business operations are relevant. Instead, it attempts to paint a false picture of an alleged plot by Plaintiff and counsel to "setup" AIG for "bad faith".

For all its bluster, what AIG calls a "setup" is nothing more than a client's consultation with his counsel. There is nothing wrong, inequitable or unethical for a client to consult with an attorney before making decisions regarding his legal claim – including settlement. Indeed, a client has an absolute right to have such a consultation and to maintain the confidentiality of having engaged an attorney. *Hooser v. Superior Court,* 84 Cal.App.4th 997, 1005–1006 (2000), disapproved of on other grounds by *Williams v. Superior Court,* 3 Cal.5th 531 (2017).

Nor does California recognize a "setup" defense in the first place. AIG does not cite to a single California authority (state or federal) acknowledging the defense *in California*. Nor is there any authority – with good reason. Where, as here, there is an affirmative settlement demand, the offeror's subjective intent is irrelevant to any issues in the case, including mutual assent. *Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326-1327 (9th Cir. 1995) ("*Lane*"). Had AIG accepted Plaintiff's demand a settlement contract would have formed, irrespective of his alleged subjective intent and whether or not the Law Firm assisted in drafting the demand. *CSAA Ins. Exchange v. Hodroj,* 72 Cal.App.5th 272, 277 (2021) ("*Hodroj*"). In fact, Courts in the 9th Circuit have considered and rejected the same arguments AIG raises here. *Lane, supra,* 43 F.3d at 1326-1327;

1 *Bostick v. Atl. Mut. Ins. Co.*, 2008 WL 11338091 (C.D. Cal. Jan. 16, 2008) ("*Bostick*").

As to the second issue – scope of attorney client protections – there are two separate issues: (1) the scope of the privilege immediately after the crash; and (2) the scope of the privilege during this litigation. As to the first issue, AIG contends that the Law Firm has not established Plaintiff needed the assistance of agents while he was hospitalized after the crash. This is both disingenuous and illogical. AIG does not dispute that Plaintiff was an immobile paraplegic, that he was intubated or had a tracheostomy the entire time he was hospitalized and that he had undergone multiple surgeries which required significant sedation and pain medication. There is simply no debating Plaintiff's need for assistance with all aspects of his life – including legal matters.

Nor is there any dispute regarding the scope of privilege during the instant litigation. AIG admits communications between clients regarding privileged matters are also privileged, but attempts to misconstrue the scope of the requested protective order. The Law Firm does not seek an order prohibiting discovery into *all* communications between its joint clients. Rather, it only seeks an order protecting communications between its joint clients which disclose or discuss privileged communications with the Law Firm.

## II. AIG'S MOTION MAKES NUMEROUS, UNSUPPORTED INFLAMATORY STATEMENTS.

To "fit" this matter into the bad faith "setup" paradigm AIG itself created, the opposition makes numerous inflammatory (and false) statements to this Court. This includes that the PLD was mailed to the wrong address, that Plaintiff's father did not have voice mail set up on his phone, that Plaintiff's father refused to answer the phone and that Plaintiff failed to provide a return mailing address. Dkt. 64, p. 15:2-7. **THERE IS NO EVIDENTIARY SUPPORT FOR ANY OF THESE STATEMENTS**. In fact, AIG does not cite any evidence in support of its inflammatory contentions. *Id.*

Nor was it out of the ordinary for Plaintiff to consult with counsel early on. As the opposition concedes, Plaintiff also had a claim against the City of Palmdale. Dkt. 64, p.

/ / /

2

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

11:19-20[1]. To make a claim against a public entity Plaintiff had to file a "government code" claim within six month of the crash. Cal. Gov. Code §§945.4, 911.2(a). Thus, Plaintiff had ample reason to immediately engage counsel to assist with his legal claim.

Insofar as this is a discovery motion, the PARRIS Firm will not address these baseless contentions – other than to note that they are without *any support* and thus should be ignored by this Court. Plaintiff will address and disprove all of these contentions at the appropriate time.

### III. THIS COURT SHOULD ISSUE A PROTECTIVE ORDER PREVENTING OR LIMITING DEPOSITIONS OF PARRIS LAW FIRM EMPLOYEES.

The Law Firm's seeks a protective order preventing the depositions of its employees, or at the very least limiting questioning to just communications with AIG. Attached to the motion is a list of 47 questions asked at a former employee's deposition, all of which AIG does not dispute invade the Law Firm's privacy/work product/trade secret rights and, likely, attorney client communications with *other* clients. Dkt. 63-8. AIG concedes that taking the deposition of opposing counsel's law firm is highly disfavored. Without explaining *why* the 47 questions are relevant *to this case*, AIG generally argues the discovery is permissible because it is relevant to its made up "setup" and its "unclean hands" defenses.[2]

---

[1] All page references are to the ECF page numbers.

[2] AIG also argues that the motion is untimely because the PARRIS Firm did not take swift action to seek a protective order. Dkt. 64, p. 21:5-19 (page references are to the ECF page number). That is wrong. The particular issues necessitating the instant motion – questions regarding the Law Firm's business practices – first arose during the deposition of Brittany Hall, a former employee. The Law Firm was not and could not have been aware AIG would seek such information since Mrs. Hall was deposed in her individual capacity, not as a 30(b)(6) witness. In other words, AIG did not announce what the scope of the deposition would be in advance. The first time the PARRIS Law Firm learned that AIG intends to invade its private information was during the deposition – on March 18, 2025. Dkt. 63-6, p. 2. The Law Firm objected to the questions and promptly moved for this protective order a week later. There was no delay.

3

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

1    AIG's argument is just a longer rehash of its now rejected motion to compel
2 discovery of attorney client communications. See Dkt. 46 (motion) and 60 (order). This
3 Court should grant the instant motion for the same reason it denied AIG's.  Moreover,
4 AIG's stated need for the discovery – the "setup" defense – does not exist in California,
5 and discovery into privileged/protected information is not permitted as a matter of law.
6 *Bostick, supra,* 2008 WL 11338091 at *4. The 9th Circuit has so held. *Lane, supra,* 43 F.3d
7 at 1326-1327. Plaintiff's subjective intent in making the demand, who helped him and
8 why he decided to make a settlement are wholly irrelevant because mutual assent is solely
9 determined by the parties' objective actions. *Id.*; *Meyer v. Benko*, 55 Cal.App.3d 937, 942–
10 943 (1976).

    Nor is it unlawful, inequitable or in any way wrongful for a client to consult with
an attorney before making a settlement demand. Clients have a fundamental right to
consult with counsel and to maintain the secrecy of that consultation. *Hooser, supra,* 84
Cal.App.4th at 1005–1006.  A protective order should issue barring AIG from deposing
Plaintiff's counsel, or at the very least to limit questioning at said depositions solely to the
Law Firm's communications with AIG (i.e. prohibiting AIG from seeking information
invading the attorney client/work product/trade secret/privacy protections).

### A.   A Protective Order Is Necessary To Prevent Defendant From Questioning Employees Regarding The Firm's Business Practices.

    AIG does not dispute, and therefore concedes, that the 47 questions regarding the
PARRIS Firm's business operations (see Dkt. 63-8) invade the Firm's privacy, work
product and trade secret rights and, likely, attorney client communications with *other*
clients. AIG contends the information is relevant to its made up "setup" and unclean hands
defenses. Dkt. 64, p. 22:16 – 23:14. As outlined in the next section, there is no "setup"
defense recognized in California, nor do AIG's unsubstantiated allegations of a "setup"
support an unclean hands defense.

    Even if "setup" was a recognized defense (it is not), how the Law Firm conducts its
business with *other clients* is not relevant to Plaintiff's settlement demand *in this case*.

4

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

The issues in dispute here are narrow: whether Plaintiff's policy limits demand was "reasonable" and whether AIG acted "unreasonably" in rejecting it. How the Law Firm markets, what information it gets from *other clients*, what actions it takes to investigate *other claim* and how it staffs its files are completely irrelevant to resolution of these issues. AIG does not need to know how the PARRIS Firm conducts business to establish what happened in *this matter*. AIG does not argue otherwise. Thus, should the Court permit the depositions to go forward, a protective order must issue preventing AIG from inquiring regarding Law Firm business practices (i.e. the 47 questions and others of the same ilk).

### B. A Protective Order Is Necessary To Prevent AIG From Questioning Law Firm Employees Regarding Privileged/Work Product Information.

In addition to information regarding Law Firm's general business practices, AIG also appears to be focused on discovering the Law Firm's communications with and scope of work for Plaintiff. In other words, AIG wants to know what the Law Firm did for Plaintiff and why. AIG does not dispute that this information is privileged. Instead, it rationalizes that it should be allowed to invade the privilege because it needs to substantiate its made up "setup" and "unclean hands" defenses. Dkt. 64, p. 22:16 – 23:14. The same arguments were rejected when this Court denied AIG's motion to compel. Dkt. 46 (Motion) and 60 (Order). A protective order should issue for the same reason.

Further, even if the Law Firm assisted Plaintiff in drafting the demand, that is nothing more than a client exercising his right to consult with an attorney and his right to maintain the confidentiality of that consultation. There is nothing wrong or immoral about that. To the contrary, it is a fundamental right. *Hooser, supra,* 84 Cal.App.4th at 1005–1006. In any event, the claimed "setup" defense has never been recognized in California, and attempts to use the nonexistent defense as a basis to take discovery from counsel have been rejected by courts in the 9th Circuit. *Lane, supra,* 43 F.3d at 1326–1327; *Bostick, supra,* 2008 WL 11338091 at *4.

/ / /

/ / /

### 1. This Court has already rejected AIG's arguments when it denied AIG's motion to compel.

As the Court may recall, AIG made the *identical* arguments in its motion to compel production of Plaintiff's privileged attorney/client communications.[3] That is, AIG argued that it should be permitted to invade the attorney client privilege because it needed the information to substantiate its defenses, including the fictional "setup". See, Fn. 2, *ante*. Its arguments in opposition to the instant motion are just a longer rehash of the arguments this Court has already rejected. AIG's motion to compel was denied because these arguments were unavailing. The instant motion should be granted for the same reason.

### 2. A client's consultation with her attorney is not a "setup".

Initially, it is important for this Court to recall what it is that AIG calls a "setup". AIG does not contend that Plaintiff provided made material misrepresentations in his demand or promises he did not keep. Rather, it claims that a "setup" occurred because Plaintiff *may have* discussed and/or received assistance in making the demand from his counsel, and did not disclose that consultation to AIG. That is the sum and substance of its argument.

This is not a "setup". There is nothing wrong, irregular or inequitable for an injured individual to consult with an attorney before taking legal action – including making a legally binding settlement demand. "'[E]very person [has the right] to freely confer with and confide in his attorney in an atmosphere of trust and serenity....' [Citation omitted.]"

---

[3] AIG's motion to compel argued that: (1) the privileged information is necessary to substantiate its "setup" and unclean hands defenses. Dkt. 46, p. 6:1-5, 13:20 – 14:2; Dkt. 54, p. 4:9-11 (the information AIGPC seeks through the motion is relevant to whether Tomaszewski has unclean hands and whether the PARRIS Law Firm tried to engage in a bad faith setup, yes.") It also argued that there has been a waiver of the privilege because Plaintiff made material misrepresentations in his complaint. Dkt. 46, p. 11:8-10 ("Plaintiff has waived these privileges … his misrepresentation to the Court—namely the allegations in the operative complaint— warrant waiver of any claimed privilege.") It makes the identical arguments in its opposition to the instant motion.

*Hooser, supra,* 84 Cal.App.4th at 1005–1006. In fact, insurers like AIG routinely consult with their counsel before making decisions regarding payment of claims.[4] A Plaintiff's consultation with her attorney before making legal demand is proper for the same reason it is proper for an insurer to consult with an attorney before responding to such a demand. Doing so is not a "setup".

Nor is it a "setup" for a client not to disclose that she consulted with an attorney. "Clients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they *reasonably expect to remain private*." *Hooser v. Superior Court,* 84 Cal.App.4th 997, 1005–1006 (emphasis added). The client has the absolute right not to reveal that consultation. *Id.* That right remains inviolate "until such time as the consultation is disclosed to third parties, through the filing of a lawsuit, the open representation of the client in dealing with third parties or in some other manner." *Id.* at 1006. Here, Plaintiff had a fundamental right to consult with an attorney regarding his claim. He was under no duty, equitable or otherwise, to disclose to AIG that he had retained or consulted with counsel. *Id.* If and to the extent Plaintiff exercised those rights, there was no "setup."

### 3.  California does not recognize a "setup" defense.

Nor is AIG's made up "setup" defense even a cognizable defense in California. AIG's opposition spills much ink quoting from journal articles and out of State opinions. The one thing it lacks is actual case authority establishing a "setup" defense in California. AIG cites to the concurrence in *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 900, n.2 (1985),

///

///

---

[4] See *Farris v. Fireman's Fund Ins. Co.,* 119 Cal.App.4th 671, 684 (2004) ("insurer often consults with coverage counsel for an opinion on whether coverage is owed and to help develop response to tender of defense; advice from coverage counsel that denial of coverage is legally proper …") (quoting generally 1 Cal. Liability Insurance Practice: Claims & Litigation (Cont. Ed. Bar 2003) §§ 10.13, 10.14.)

7
**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

which raised potential concerns with the "bad faith" tort. Dkt. 64, p. 5:7-12.[5] However, in the 40 years since that opinion was published the Supreme Court has never revisited the issue. Nor has any intermediate California appellate court or any California federal court. There is no cognizable "setup" defense in California.

More narrowly, no California court, state or federal, has ever permitted discovery into privileged/protected information under the guise that it is necessary to establish a plaintiff's subjective intent regarding settlement. This is because the offeror's intent and motivations in making the demand are completely irrelevant. If the demand is accepted there is a settlement contract, irrespective of the subjective intent of the parties in either making or accepting the demand. *Hodroj, supra,* 72 Cal.App.5th at 277.

Federal courts addressing the issue have so held. As outlined in the moving papers, *Bostick, supra,* 2008 WL 11338091, rejected a bid to depose plaintiff's counsel regarding "who participated in the drafting of the demand letter, the motivation to discuss making a policy limits demand, … the circumstances leading to the demand letter, [and] the timing and deadline of the demand … *Id.* at *4. AIG argues *Bostick* is distinguishable because the issue there was "whether an insurance company 'acted reasonably in rejecting the policy limits demand[']". Dkt. 64, p. 23:1-6. It reasons that here the issue is "the bad faith setup" which is "directly relevant to AIGPC's unclean hands affirmative defense and … to whether Tomaszewski's settlement demand was reasonable."

AIG is wrong, *Bostick* expressly held that discovery regarding subjective motivations does not go "go to the issue of *whether defendant had a reasonable*

---

[5] AIG also quotes selectively from *J.B. Aguerre, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 59 Cal. App. 4th 6, 20 (1997) ("*Aguerre*") in support of its contention that there is a bad faith "setup" defense. Dkt. 64, p. 5:2-4. *Aguerre* held no such thing. While the facts did involve a settlement, the case involved a different issue – did the insurer breach the implied covenant by coercing the insured to contribute to a settlement. *Id.* at 15. *Aguerre* concluded that the insurer did not. *Id.* at 16 (the complaint "alleges no facts to show that Zurich coerced or attempted to coerce [the insured] to contribute to the settlement…") *Aguerre's* comments regarding a "bad faith setup" were pure dicta, and were not the basis of the Court's conclusion.

8

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

*opportunity to settle the case within the policy limits* and unreasonably rejected the settlement demand." *Bostick, supra,* 2008 WL 11338091 at *4 (italics added). Whether a demand provides a "reasonable opportunity to settle" is just another way of asking whether the demand was "reasonable". Thus, *Bostick* considered and rejected the identical argument AIG makes here.

The 9th Circuit reached the identical result in *Lane, supra.*[6] There, plaintiff made a bad faith claim against the insurer for failing to settle. *Id.* at 1325-1326. The insurer sued retained defense counsel for malpractice related to the failed settlement. *Id.* Defense counsel argued it did not cause the excess judgment because the settlement demand was an attempt to "setup" a bad faith claim. *Id.* On that basis, defendant "sought access to information about the *plaintiffs' and their attorneys'* states of mind, motivations, and intent with respect to their settlement negotiations …" *Id.* at 1326 (emphasis added). Acknowledging this was privileged, defendant argued that there was an implied waiver because plaintiff had pursued a bad faith claim against the insurer. *Id.* The 9th Circuit rejected defendant's contention and did not permit discovery into the plaintiffs or their attorneys' motivations. It explained:

> [Defendant] asserts that the motivation pleaded by the plaintiffs for making the [within limits] offer was to set up a bad faith claim. … Clearly, if the plaintiffs made a serious offer to settle their claims, they were not unwilling to settle as [defendant] maintains. ***It follows then that even if there were attorney-client communications that would indicate that the plaintiffs were attempting to set up a bad faith action, they would not be***

---

[6] *Lane* applied Alaska law. Like California, Alaska ascribes to the "objective" standard for mutual assent under which "unexpressed subjective intentions are irrelevant to the mutual assent analysis as a matter of law." *Kingik v. State, Dept. of Admin., Div. of Retirement and Benefits,* 239 P.3d 1243, 1251 (Alaska 2010). "Because a contract is assessed under an objective standard, if a party objectively manifested an intention to be bound by the terms of a contract, that assent cannot be defeated by evidence of the party's ... subjective contrary intentions." *Dutton v. State,* 970 P.2d 925, 928 (Alaska App.1999).

9

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

> *relevant in light of the plaintiffs' apparent willingness to settle at the time of the [within limits] offer*.

*Lane, supra,* 43 F.3d at 1326–1327 (emphasis added); See, also, *Cox v. Continental Cas. Co.* (W.D. Wash., May 16, 2014, No. C13-2288 MJP) 2014 WL 2011238, at *8, *aff'd* (9th Cir. 2017) 703 Fed.Appx. 491 (denying insurer's motion to compel "materials relating to Plaintiffs' willingness to settle" because it "has not shown that subjective evidence of a bad-faith setup is relevant to a bad faith defense in Washington.")

So too here, it is undisputed that Plaintiff made a settlement demand and that AIG received it. What is in dispute is whether the demand was "reasonable" and whether AIG acted "unreasonably" in response. As the 9th Circuit explained, because a settlement demand was made, it is irrelevant whether Plaintiff consulted with an attorney before making the demand, or secretly wished that AIG would reject it. *Lane, supra,* 43 F.3d at 1326–1327. Plaintiff's motivations, who he consulted with and why he made the demand are completely irrelevant to any issue in dispute, and thus this Court should enter a protective order barring AIG from doing discovery on such matters.

### 4. Plaintiff's subjective intent in making the demand is irrelevant.

AIG contends that the discovery it seeks – regarding Plaintiff's subjective motivations - is pertinent to establish mutual assent. Dkt. 64, p. 16:13 - 21. It is wrong. "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe [citation omitted.]" *Meyer, supra,* 55 Cal.App.3d at 942–943. "[M]utual consent is gathered from the reasonable meaning of the *words and acts* of the parties, and not from their unexpressed intentions or understanding." 1 Witkin, Summary of Cal. Law (11th ed. 2024) Contracts § 116. "[U]communicated subjective intent is irrelevant." *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579.

/ / /

/ / /

/ / /

### 5. Plaintiff's communications with the PARRIS Law Firm and motivations in making the demand are irrelevant to the Unclean Hands Defense.

AIG argues it needs "subjective intent" discovery to meet its burden on the unclean hands defense, i.e. AIG wants to establish that subjectively Plaintiff intended to "setup" a bad faith claim, and that this subjective intent constitutes "unclean hands." Dkt. 64, p. 22:20 - 24. This is a backdoor way of asserting the nonexistent "setup" defense. AIG attempts to obtain discovery into privileged/protected subjects by rebranding a purported "setup" as "unclean hands". AIG cannot manufacture a nonexistent defense by relabeling it as "unclean hands."

Moreover, the claimed "setup" conduct – not disclosing Plaintiff (allegedly) consulted with counsel before making the demand – does not support an unclean hands defense as a matter of law. Plaintiff has sued AIG as an assignee of its insured – Saskia Theihzen. Dkt. 1, ¶35. AIG did not owe Plaintiff any duty of good faith, and conversely Plaintiff did not have any obligations to AIG.[7] The rights at issue are Theihzen's. AIG, then, attempts to defeat *Theihzen's* legal claim by pointing to evidence of *someone else's* conduct. There is no authority for that proposition. Since Theihzen's rights are at issue it is Theihzen's conduct that must form the basis for unclean hands. If Theihzen had brought the lawsuit herself AIG could not base an unclean hands defense on *Plaintiff's* conduct. The result is no different where Theihzen's claims are being asserted by her assignee.

Nor is there a basis for the defense even if Plaintiff's conduct was at issue. Courts have developed a "three-pronged test to determine the effect to be given to the plaintiff's unclean-hands conduct. Whether the particular misconduct is a bar to the alleged claim

---

[7] "[A]n insurer owes no duty of good faith and fair dealing to a third party claimant … because the claimant, as a stranger to the insurance policy of the other insured, has no relevant contractual relationship with the insurer and remains in an adversarial position toward the insurer …" *Coleman v. Republic Indemnity Ins. Co.,* 132 Cal.App.4th 403, 415 (2005).

for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. [Citations.]" *Kendall-Jackson Winery, Ltd. v. Superior Court,* 76 Cal.App.4th 970, 979 (1999). As to the first prong, no California court, State or Federal, has ever recognized a "setup" defense. Nor is one warranted where, as here, an actual settlement demand has been made. *Lane, supra,* 43 F.3d at 1326–1327.

As to the second prong, to invoke the doctrine the conduct at issue must "violate[] conscience, or good faith, or other equitable standards of conduct …" *Kendall-Jackson, supra*, 76 Cal.App.4th at 979. AIG contends that Plaintiff's failure to disclose he (allegedly) consulted with counsel before making the demand constitute unclean hands. As noted above, however, Plaintiff had an absolute right to consult with counsel regarding his legal claims, including whether to settle. *Hooser, supra,* 84 Cal.App.4th at 1005–1006. Moreover, he had an absolute right to maintain the confidentiality of that (alleged) consultation. *Id.* Plaintiff did not have a special relationship with AIG, and did not have any legal or equitable duties to disclose anything. Thus, the alleged wrongful conduct can never rise to the level needed to support an unclean hands defense.

Nor can AIG satisfy the third prong – the relation of the conduct to the claimed injuries. The party asserting unclean hands must establish that it was "injured by the alleged wrongful conduct." 3 Cal. Affirmative Def. § 45:3 (2d ed.), "The misconduct must prejudicially affect ... the rights of the person against whom the relief is sought …" *Kendall-Jackson Winery, supra,* 76 Cal.App.4th at 979 (internal quotation marks omitted). Absent such injury, the defense does not apply as a matter of law. *Jade Fashion & Co. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635, 654 (2014) ("Because [plaintiff's conduct] did not result in any prejudice to [defendant], the unclean hands defense did not apply.") Here, no such prejudice can be shown.

Although it is not entirely clear, AIG apparently contends that it was prejudiced because it was unaware that Plaintiff had consulted with counsel when it responded to the settlement demand. AIG does not explain how it was prejudiced, or what would have been

12

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

different had it known. The answer is nothing. Knowledge of an attorney consultation did not make any difference to AIG's rights or obligations. AIG's good faith obligations were owed to its insured, not to Plaintiff. See Fn. 7, *supra*. Those obligations were the same no matter who sent the settlement demand and whether Plaintiff was represented by counsel or not. If AIG had accepted Plaintiff's demand a settlement would have resulted - whether or not Plaintiff consulted with the PARRIS Law Firm, and whether or not AIG was aware of such consultation. *Hodroj, supra,* 72 Cal.App.5th at 277. AIG's "setup" allegations are nothing more than an attempt to mask its own ineptitude in responding to the demand. They do not justify invading Plaintiff's attorney-client privilege or the Law Firm's work product/privacy/trade secrets.

### 6. AIG has not shown a compelling need for privileged/protected information.

AIG's opposition does not satisfy *its* evidentiary burden to establish a waiver of the opposing party's attorney client privilege or their counsel's work product, trade secret and/or privacy protections. "Privileged communications do not become discoverable simply because they are related to issues raised in the litigation. *Transamerica Title Ins. Co. v. Superior Court* (1987) 188 Cal.App.3d 1047, 1052, citing *Schlumberger Limited v. Superior Court* (1981) 115 Cal.App.3d 386. As this Court correctly ruled in connection with AIG's motion to compel, Plaintiff has not placed his attorney client communications at issue and thus there is no implied waiver of the privilege. Dkt. 60.

Similarly, discovery into information protected by the Law Firm's rights/privileges is not warranted absent a showing of relevance and a compelling need. Neither can be shown here. As explained above, evidence of the Law Firm's general business practices (i.e. the 47 questions) is not relevant to anything in dispute. Similarly, as in *Lane, supra,* evidence of Plaintiff's subjective intent in making the demand (or that of his counsel's) are also irrelevant to any issue in dispute. *Lane, supra,* 43 F.3d at 1326–1327.

AIG's rehashed argument that Plaintiff made a "misrepresentation" warranting disclosure is also without merit. Dkt. 64, p. 7, fn. 2. This argument was already rejected

in connection with AIG's motion to compel production of privileged documents. Dkt. 60. AIG attempts to bolster its argument by claiming Plaintiff made additional misrepresentations in opposition to its denied motion to dismiss. Dkt. 64, p. 7, fn. 2. However, a simple review of the opposition reveals that Plaintiff never mentioned the date he retained counsel – the alleged misrepresentation. Dkt. 64, p. 7, fn. 2. Plaintiff opposition to the motion to dismiss cites to the offending complaint paragraph (no. 16) only once, and for a wholly different proposition: "AIG ultimately "corroborated" Nick's claim when its independent adjuster personally met with Nick for a 'few minutes.'" Dkt. 32, p. 18:6-7. There was no misrepresentation.

### IV. THE PARRIS FIRM IS ENTITLED TO A PROTECTIVE ORDER REGARDING ITS PRIVILEGED CLIENT COMMUNICATIONS.

#### A. Communications Immediately After The Crash.

AIG concedes communications between the PARRIS Firm and Plaintiff's agents are privileged. Dkt. 64, p. 23:22-27. It contends that the motion does adequately define the time period for privileged communications. *Id.*, p. 24:3-4. That is not true. The Parties have stipulated that the relevant time period for purposes of this action is August 21, 2015 (the date of the crash) to January 8, 2016. Since discovery is limited to this time period, this is the period of time at issue in this motion/litigation.

AIG contends that the motion does not establish that Plaintiff's family and/or friends were there to assist him as his agents, or that he needed such assistance. It provides the Court with carefully redacted medical records in an attempt to create the impression Plaintiff could easily communicate. This is disingenuous. AIG has reviewed over 4,000 pages of medical records produced in response to discovery and is well aware of Plaintiff's dire physical condition, and that he could not conduct his own affairs immediately after the crash. A review of the records AIG *itself* attaches to its opposition substantiate this.

The only references to communications in the redacted records appear at pages 6 and 8 of Docket 64-5. At page 6, the progress notes provide that the Doctor had a discussion with Plaintiff and his mother. Dkt. 64-5, p. 6. There is no indication that

14

**PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

1 Plaintiff was able to do anything other than understand. At page 8 the note provides that
2 Plaintiff was able "to express basic wants and needs" and that he is using a "speaking
3 valve." Dkt. 64-5, p. 8.  In the chart above that entry the number "5" appears near the
4 word "Expression". *Id.* According to the chart, the number "5" indicates that Plaintiff
5 "[n]eeds or set-up." *Id.*  The reference to a valve is to a Passy Muir Valve, a device inserted
6 into a tracheostomy tube.  (See https://www.passy-muir.com/valves_page/.) An immobile
7 hospitalized patient, who is a paraplegic, is still recovering from multiple surgeries and
8 must communicate through a tracheostomy tube is certainly someone who requires the
9 assistance of others with his legal needs.

The motion adequately lays out Plaintiff's incompetence and need for assistance, including through medical records. Dkt. 63, p. 12:19 – 13:21; 29:13 – 30:27. If the Court believes additional medical records/evidence is necessary to establish that Plaintiff's family/friends were acting as his agents, the PARRIS Firm requests leave to file additional evidence contained within the over 4,000 pages of medical records AIG has ignored.

**B.     Communications During The Instant Lawsuit.**

AIG misconstrues the scope of the protective order the PARRIS Firm seeks. The Firm does not seek a protective order barring questioning regarding *all* communications between its joint clients. Rather, it is asking for an order barring questioning of communications between its joint clients which disclose otherwise attorney-client privileged matters. In other words, if one client discusses her communications with the Law Firm or the Law Firm's recommendations with another client, that communication is protected. Any communications beyond that limited scope fall outside the scope of the requested protective order.

Respectfully submitted,

DATED: April 7, 2025                **PARRIS LAW FIRM**

By:  /s/ Daniel Eli
     Daniel Eli
     Attorneys for PARRIS Law Firm

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 43364 10th Street West, Lancaster, California 93534.

I hereby certify that on April 7, 2025 I served the above and foregoing document described as **PARRIS LAW FIRM'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER** by causing true and accurate copies of such papers to be filed and transmitted to the persons shown below as follows:

Jennifer L. Keller
jkeller@kelleranderle.com
Benjamin R. Barron
bbarron@kelleranderle.com
Shaun A. Hoting
shoting@kelleranderle.com
Craig Harbaugh
charbaugh@kelleranderle.com
Akhil Sheth
asheth@kelleranderle.com
KELLER/ANDERLE, LLP
18300 Von Karman Avenue, Suite 930
Irvine, California 92612

[ X ]   **BY ELECTRONIC FILING/SERVICE as follows:** I electronically transmitted the attached document to the Clerk's Office using the Court's CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants identified above. Per ECF rules, hard copies must be served only on those parties who are not set up for electronic notification.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

*Jacqueline Meza*
Jacqueline Meza

**CERTIFICATE OF SERVICE**